UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> LUIS RODRIGUEZ, <br><br> Defendant. | Case No. 5:13-cv-05551-BLF <br><br> **ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT** <br><br> [Re: ECF No. 21] |

## I.  INTRODUCTION

Plaintiff J & J Sports Productions, Inc. sues Defendant Luis Rodriguez for the unlawful interception and intentional exhibition of a boxing match for which Plaintiff owned the exclusive television distribution rights.  Plaintiff has filed an Application for Default Judgment against Defendant.  For the following reasons, the application is GRANTED.

## II.  BACKGROUND

Plaintiff is a sports and entertainment programming distributor that owned the exclusive nationwide distribution rights to *Manny Pacquiao v. Juan Manuel Marquez, IV Welterweight Fight Program*, which was telecast on December 8, 2012.  (Am. Compl. ¶ 20, ECF 12)  This program included the main fight between Manny Pacquiao and Juan Manuel Marquez as well as preliminary under-card bouts.  (*Id.*)  In order to broadcast the program, a commercial establishment was required to enter into a sublicensing agreement with Plaintiff.  (*Id.* ¶ 21)  The license authorized the establishment to display the program publicly.  (*Id.*)

On the date of the telecast, investigator Gary Gravelyn observed the alleged unlawful

1   exhibition of the program at Los Jarritos, a Mexican restaurant. (Gravelyn Decl., ECF 21-3)[1] In

2   his declaration, investigator Gravelyn reported seeing three fifty-inch television sets located

3   throughout the restaurant; it is not clear whether all three television sets were showing the boxing

4   match. (*Id.*) He noted that a cable box "was not" visible and that the restaurant "has" a satellite

5   dish. (*Id.*) No cover charge was required to enter the restaurant in order to watch the boxing

6   match, nor was the purchase of food or drink required. (*See id.*) Gravelyn reported the capacity of

7   the restaurant to be approximately 150 people. (*Id.*) During the four minutes he was there,

8   Gravelyn conducted three headcounts. (*Id.*) He counted "100+" people on the first headcount,

9   105 people on the second headcount, and 109 people on the final headcount. (*Id.*)

10       On December 2, 2013, Plaintiff filed this action against Defendant Juan Penalver, the

11  named business owner of Los Jarritos. (Compl. ¶¶ 7-12, ECF 1) Plaintiff amended the Complaint

12  on March 3, 2014 in order to add Luis Rodriguez as a defendant. (Am. Compl. ¶¶ 13-18, ECF 12)

13  Based upon supplemental information provided by Plaintiff, the Court is satisfied that Luis

14  Rodriguez is the legal operator of Los Jarritos. (Supp. Br., ECF 27) Three weeks later, Plaintiff

15  voluntarily dismissed the action against Penalver. (Not. of Vol. Dismissal, ECF 16) Defendant

16  Rodriguez was served with the Amended Complaint on March 11, 2014 and his answer was due

17  on April 1, 2014. (Proof of Serv., ECF 15) Defendant Rodriguez did not file an answer and has

18  not appeared. On April 9, 2014, Plaintiff filed a Request for Entry of Default (Req. to Enter

19  Default, ECF 17), which was served upon Defendant. (*Id.* at 3) The clerk entered default on April

20  17, 2014. (Entry of Default, ECF 20)

21       Plaintiff now seeks default judgment granting the following relief: (1) $10,000 in statutory

22  damages for violation of 47 U.S.C. § 605; (2) $100,000 in enhanced statutory damages for

23  violation of 47 U.S.C. § 605; (3) $4,200 in damages for conversion under California Civil Code §

24  3336; and (4) reasonable attorney's fees and costs.

---

[1] The Gravelyn Declaration, which is entitled "Declaration of Affiant," is a two-page fill-in-the-blank form that lacks paragraph numbers or other means for providing specific citations to the information contained therein. Thus, the Gravelyn Declaration is cited only generally throughout this order.

2

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court, following an entry of default, to enter default judgment against a defendant. Upon an entry of default, all well-pled factual allegations of the plaintiff's complaint are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

The Ninth Circuit considers seven factors, commonly known as the "*Eitel* factors," in determining whether default judgment is appropriate:

> (1) [T]he possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## IV. DISCUSSION

Applying the *Eitel* factors set forth above, the Court finds as follows: if the Application for Default Judgment were to be denied, Plaintiff would be left with no remedy because Defendant has refused to litigate this action (factor 1). Taking all material facts pled in the Complaint as true, Plaintiff has made out a sufficient claim (factor 3). *See Fair Hous. of Marin*, 285 F.3d at 906 (noting that upon entry of default, "well-pled allegations in the complaint regarding liability are deemed true"). Plaintiff has adequately alleged Defendant's violations of 47 U.S.C. §§ 553, 605, and California Civil Code § 3336 (factor 2). Although the Court concludes that Plaintiff's request for maximum damages under 47 U.S.C. § 605 is disproportionate to the harm alleged, the Court may award damages as it considers just (factor 4). *See* 47 U.S.C. § 605(e)(3)(C). There is no dispute of material fact because Defendant failed to answer the Amended Complaint (factor 5). Furthermore, there is no evidence that Defendant's default was due to excusable neglect (factor 6). Defendant was served with notice of this action as well as the Application for Default Judgment (Pl.'s Appl. at 23, ECF 21-1), and Defendant has failed to defend the action or otherwise

communicate with the Court. Finally, "although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations such as this where defendants refuse to litigate" (factor 7). *J & J Sports Prods., Inc. v. Concepcion*, No. 10-CV-05092, 2011 WL 2220101, at *2 (N.D. Cal. June 7, 2011). Accordingly, the Court GRANTS Plaintiff's Application for Default Judgment.

### A.   Statutory Damages

Violations of both 47 U.S.C. §§ 553 and 605 are alleged in the Amended Complaint. Generally, § 605 applies to interceptions of satellite transmissions and § 553 applies to interceptions of cable transmissions. *See, e.g., Cal. Satellite Sys. v. Seimon*, 767 F.2d 1364, 1367-68 (9th Cir. 1985). The Federal Communications Act, 47 U.S.C. § 605, prohibits any person from receiving or transmitting "wire or radio" signals "except through authorized channels of transmission or reception." 47 U.S.C. § 605(a). An aggrieved party may recover a sum of not less than $1,000 and not more than $10,000 for each violation of § 605(a), as the court considers just. 47 U.S.C. § 605(e)(3)(C)(i)(II). Under the Cable and Television Consumer Protection Act, 47 U.S.C. § 553, a person is prohibited from "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so." 47 U.S.C. § 553(a)(1). Damages for each violation range from a minimum of $250 to a maximum of $10,000. 47 U.S.C. § 553(c)(3)(A)(ii). Because §§ 605 and 553 prohibit two distinctly different activities, Plaintiff may not recover under both. *See J & J Sports Prods., Inc. v. Manzano*, No. 08-CV-01872 RMW, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008).

Plaintiff asserts that it "cannot determine the precise means that the Defendant used to receive the program unlawfully" but that it "should not be prejudiced because it cannot isolate the precise means of signal transmission." (Pl.'s Appl. at 8, ECF 21-1) Plaintiff seeks damages under § 605, arguing that it is reasonable to assume that Defendant intercepted the transmission by satellite signal because the investigator observed a satellite dish and did not see a cable box during his visit to Los Jarritos. (*See* Gravelyn Decl., ECF 21-3) While not conclusive, the investigator's observation renders Plaintiff's allegation that the interception occurred by satellite transmission

4

sufficiently plausible for purposes of default judgment. *See J & J Sports Prods., Inc. v. Dailey*, No. C 09-CV-04205 JW, 2010 U.S. Dist. LEXIS 143128, at *4 n.4 (N.D. Cal. Mar. 19, 2010) (finding that the presence of a satellite dish was sufficient to justify damages under § 605); *but see J & J Sports Prods., Inc. v. Cardoze*, No. C 09-05683 WHA, 2010 WL 2757106, at *3 (N.D. Cal. July 9, 2010) (finding that seeing a satellite dish and not seeing a cable box was not sufficient proof to justify damages under § 605).

Defendant did not charge a cover for patrons to enter the restaurant and watch the boxing match, nor did he require the purchase of food or drink. (*See* Gravelyn Decl.) There were three television sets in the restaurant, at least one of which displayed the program, and the restaurant was about two-thirds full while the investigator was present. (*See id.*) Plaintiff presents no evidence that Defendant is a repeat offender. Given these circumstances, the Court finds minimum statutory damages to be appropriate. Accordingly, Plaintiff is awarded $1,000 in statutory damages under 47 U.S.C. § 605.

**B.     Enhanced Damages**

Plaintiff also requests enhanced damages of $100,000, the maximum amount available under 47 U.S.C. § 605(e)(3)(C)(ii). Enhanced damages are available when the violation was committed willfully or for the purpose of commercial advantage or private financial gain. *See* 47 U.S.C. § 605(e)(3)(C)(ii).

The Ninth Circuit has not articulated a test for determining when enhanced damages are appropriate. District courts consider a variety of factors including the "use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant." *Concepcion*, 2011 WL 2220101, at *4. Courts also have awarded enhanced damages when the defendant has violated the statute repeatedly. *See J & J Sports Prods., Inc. v. Paniagua*, No. 10-CV-05141-LHK, 2011 WL 996257, at *2 (N.D. Cal. Mar. 21, 2011).

Although Plaintiff cites several out-of-district cases to support its request for maximum enhanced damages, Plaintiff does not cite any binding precedent or identify any specific circumstances that justify such a high award here. (*See* Pl.'s Appl. at 15-19, ECF 21-1) As

5

1  discussed above, Defendant did not charge a cover to patrons to enter the restaurant or require the
2  purchase of food or drink on the night of the boxing match.  Defendant had three fifty-inch LCD
3  televisions, but it is not clear whether all three showed the boxing match.  There were between 100
4  and 109 patrons present in the restaurant.  Plaintiff provides no evidence of prior violations,
5  significant earnings by Defendant that night, or advertising of the exhibition of the boxing match
6  to draw a larger crowd.  Accordingly, enhanced damages are not warranted.

### C. Conversion

Plaintiff also seeks $4,200 in damages for conversion under California Civil Code § 3336. The Ninth Circuit has held that a claim for conversion has three elements: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).  These elements are satisfied because Plaintiff alleges ownership of the distribution rights to the program, misappropriation of those rights by Defendant's unlawful interception, and damages.  (*See* Am. Compl. ¶¶ 35-37, ECF 12)  Damages for conversion are based on the value of the property at the time of the conversion.  According to an affidavit provided by J & J Sports Productions, Defendant would have been required to pay $4,200 for a sublicensing agreement because the commercial establishment had a maximum capacity of 150 persons. (Gagliardi Aff. ¶ 8, ECF 23) Because Defendant did not enter into an agreement and pay the required fee, Plaintiff is entitled to $4,200 in conversion damages.

### D. Attorney's Fees and Costs

The Court has reviewed Plaintiff's request for attorney's fees and costs.  Reasonable attorney's fees and full costs are recoverable under 47 U.S.C. § 605(e)(3)(B)(iii).

Plaintiff requests $2,233.75 in attorney's fees.  Plaintiff's counsel has submitted a declaration providing a detailed invoice for this case.  While "'reasonable attorney's fee[s] . . . should compensate the work of paralegals, as well as that of attorneys'" the fees should also take into account the work of "secretaries, messengers, librarians, janitors, and others whose labor contributes to work product for which an attorney bills her client.'" *Trs. of Constr. Indus. & Laborers Health & Welfare v. Redland Ins. Co.*, 460 F.3d 1253, 1256-57 (9th Cir. 2006) (quoting

1  *Missouri v. Jenkins*, 491 U.S. 274 (1989)).  However, courts must consider the "billing custom in
2  the 'relevant market.'"  *Id.* at 1257 (citing *Jenkins*, 491 U.S. at 288).  The practice of billing
3  separately for the work of a secretary or other clerical employee must be "'the prevailing practice
4  in [the] given community.'"  *Id.* (quoting *Jenkins*, 491 U.S. at 287).  While Plaintiff requests
5  separate compensation for an administrative assistant, it has not presented any evidence showing
6  that it is the custom in the Northern District of California to bill such work separately.  Thus, the
7  fees of an administrative assistant are not recoverable here.  *See, e.g.*, *J & J Sports Prods., Inc. v.
8  Duong*, No. 13-CV-02002-LHK, 2014 WL 1478498, at *4 (N.D. Cal. Apr. 14, 2014).  The hourly
9  rates requested for the attorneys and paralegal are reasonable for similarly experienced
10 professionals in the Northern District of California and their hours devoted to prosecuting this case
11 are reasonable in light of the straightforward boilerplate work performed.  The Court grants
12 $1,577.50 in attorney's fees.

13 Plaintiff requests $1,135.00 in costs.  Of this amount, $650.00 is attributed to
14 "investigative costs."  However, Civil Local Rule 54-3 provides recovery only of the following:
15 fees for filing and service of process, reporters' transcripts, depositions, reproduction and
16 exemplification, witness expenses, fees for masters and receivers, costs on appeal, and costs on
17 bonds and security.  Civ. L.R. 54-3(a)-(h).  Other courts have not awarded such pre-filing
18 investigative costs to a prevailing party and, likewise, neither will this Court.  *See, e.g.*, *Duong*,
19 2014 WL 1478498, at *4; *Joe Hand Promotions Inc. v. Piacente*, No. C-10-3429 CW (JCS), 2011
20 WL 2111467, at *9 (N.D. Cal. Apr. 11, 2011).  The $450 in court filing fees and $85 for service of
21 process are allowable and will be awarded to Plaintiff.  The Court grants $535.00 in costs.

22 Accordingly, the Court grants $2,112.50 in reasonable attorney's fees and costs.

23 //
24 //
25 //
26 //
27 //
28 //

7

**V.    CONCLUSION**

For the reasons stated above, the Court GRANTS Plaintiff's Application for Default Judgment.  Plaintiff is awarded $1,000 in statutory damages, $4,200 in damages for conversion, and $2,112.50 in attorney's fees and costs.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: June 27, 2014

_____
BETH LABSON FREEMAN
United States District Judge